IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 4, 2014

**LEON FLANNEL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 03-07354     Carolyn W. Blackett, Judge**

_____

**No. W2014-00181-CCA-R3-ECN  - Filed December 17, 2014**

_____

The Petitioner, Leon Flannel, was convicted of murder in the perpetration of a theft and premeditated murder.  In this appeal from the trial court's denial of his petition for writ of error coram nobis, the Petitioner argues that the individual tests performed by the defense's expert witness, along with their results, should have been introduced at trial to bolster the Petitioner's diminished capacity defense.  Upon review, we find that the petition for writ of error coram nobis is barred by the statute of limitations.  Additionally, we find that the trial court did not abuse its discretion when it denied relief on the merits.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J., joined.

Eric Mogy, Memphis, Tennessee, for the appellant, Leon Flannel.

Robert E. Cooper, Attorney General and Reporter; Lacy Wilber, Senior Counsel; Amy P. Weirich, District Attorney General; and Paul Hagerman, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Leon Flannel ("the Petitioner") appeals from the Shelby County Criminal Court's denial of his petition for writ of error coram nobis.  On appeal, the Petitioner argues that the trial court erred when it found that the evidence presented at the error coram nobis hearing would not have resulted in a different judgment at trial.  We conclude that the statute of

limitations bars relief in this case, and even if the petition had been filed timely, the trial court did not abuse its discretion in denying relief on the merits.

## Factual and Procedural Background

On March 23, 2007,[1] a jury convicted the Petitioner for one count of murder in perpetration of a theft and one count of premeditated murder. State v. Leon Flannel, No. W2007-00678-CCA-R3-CD, 2008 WL 4613829, at *1 (Tenn. Crim. App. Oct. 13, 2008), perm. app. denied (Tenn. March 23, 2009). The convictions were merged, and the Petitioner was sentenced to life in prison. Id. This Court affirmed the convictions on direct appeal. Id. The Petitioner subsequently filed a petition for post-conviction relief alleging ineffective assistance of counsel, and this Court affirmed the denial of post-conviction relief. Leon Flannel v. State, No. W2011-00942-CCA-MR3-PC, 2012 WL 3156599, at *1 (Tenn. Crim. App. Aug. 1, 2012).

On July 24, 2013, the Petitioner filed a *pro se* petition for writ of error coram nobis. Counsel was appointed, and an amended petition was filed. In his amended petition, the Petitioner claimed that he was never informed of Dr. Fred Steinberg's, the defense's expert witness, recommendation that the Petitioner may have been able to use diminished capacity as a defense at trial. As his newly discovered evidence, the Petitioner attached a report, written by Dr. Steinberg, which summarizes the expert's findings based on a number of psychological tests he performed on the Petitioner. The Petitioner claimed that he never received copies of the individual tests Dr. Steinberg performed and that those tests were not introduced at trial. Had the tests and their results been introduced at trial, the Petitioner argued that the jury would have been able to conclude that the Petitioner was suffering from diminished capacity and it is likely that the Petitioner would not have been convicted as charged.[2] After a hearing, the trial court denied the petition, and the Petitioner filed a timely appeal.

### *Trial Proceedings*

At trial, the State introduced two different confessions from the Petitioner. The first was a statement the Petitioner gave to the police, which was transcribed and then signed by

---

[1] The date of the Petitioner's conviction was not included in the opinion from the direct appeal, and the judgment is not included in the record on this appeal. However, the trial court's order denying error coram nobis relief provides the date of conviction.

[2] We note that the Petitioner did not include the individual tests or their results in the record. Instead, he relies on Dr. Steinberg's summary report.

the Petitioner.  Leon Flannel, 2008 WL 4613829, at *3.  In this statement, the Petitioner admitted to shooting the victim multiple times after the victim made unwanted sexual advances toward him.  Id.  He said that the victim had previously shown him a gun that the victim kept on a dresser.  Id.  The Petitioner asked the victim if he could see the gun, and after the victim handed the Petitioner the firearm, the Petitioner "put [as] many holes as I could put in him."  Id.  The Petitioner left the scene with the victim's keys and cell phone, but he threw them away in a field next to a gas station.  Id.

The State also introduced a three-page letter, which indicated the Petitioner was the author.  Id. at *4.  In that letter, the Petitioner said that he had accompanied the victim to the victim's house.  Id.  They drank a "few beers," and the victim fell asleep.  Id.  The Petitioner found the gun, woke up the victim, and robbed him.  Id.  When the victim told the Petitioner that he did not have any money, the Petitioner "hit him six times in the head" and took the victim's wallet, the little money he had, his watch, and his cell phone.  Id.  The Petitioner called Keeiyona Hill and told her that he was about to kill the victim, but in the letter, the Petitioner admits that, at the time he called Ms. Hill, the victim was already dead.  Id.

Dr. Steinberg testified at trial as the defense's expert witness.  On direct appeal, this Court summarized his testimony as follows:

> Dr. Steinberg testified that he administered several tests to determine the [Petitioner's] intelligence, behavior, and cognitive abilities.  Dr. Steinberg noted that the [Petitioner's] IQ was 74, which was in the borderline range of intellectual functioning.  He also tested poorly on several psychological tests, indicating that he tended to have poor judgment, impulsive behavior, a short attention span, a tendency to favor simple solutions to complex problems, and did not perceive the world in the same way most people perceived it.  The [Petitioner] read reasonably well.  He had an eighth grade reading ability, but his reading comprehension was at the third grade level.
>
> Dr. Steinberg testified that the [Petitioner] had suffered head injuries in 1996 and 2002, requiring hospitalization in a rehabilitation center.  However, Dr. Steinberg testified that he did not believe the [Petitioner's] head injuries contributed to his mental problems.  He noted:
>
>> I found him to have, as I said, poor reality testing.  There was no evidence of active psychosis at the time I tested him, but he's high risk to relapse under certain circumstances, not only because of his cognitive abilities or lack of, but also because of his history of psychotic thinking.  He's prone to a lot of

-3-

impulsivity. He's very concrete, and, of course, his intellectual function was in the borderline area. These things culminate in poor judgment.

On cross-examination, Dr. Steinberg acknowledged that the [Petitioner] had no psychosis, was competent at the time of the crime, and was not committable as a danger to himself or others. When shown the three page letter, Dr. Steinberg acknowledged that the language and tone of the letter differed from what the [Petitioner] related to him. Specifically, Dr. Steinberg acknowledged that the letter's indication that the [Petitioner] decided to rob the victim, then kill him, did not suggest impulsivity. However, Dr. Steinberg suggested that the [Petitioner] wrote this letter in jail and probably took a "macho approach" because his circumstances had changed at the time of writing the letter.

Id. at *4-5.

Based on this evidence, along with testimony from other witnesses, the jury convicted the Petitioner as charged. Id. at *5.

*Error Coram Nobis Proceedings*

At the beginning of the error coram nobis hearing, the State argued that the petition should be dismissed because it had been filed outside the one-year statute of limitations. The State also noted that the summary report the Petitioner planned to offer as new evidence was dated October 26, 2005, seven years before the Petitioner filed his petition for writ of error coram nobis. The Petitioner argued that the one-year statute of limitation began running when he discovered Dr. Steinberg's letter in 2012, and since he filed his petition within a year of its discovery, he had filed within the statute of limitations. The trial court stated that it believed the statute of limitations had expired, but in the interest of judicial efficiency, it proceeded with the hearing.

Trial counsel testified that, prior to trial, he had the Petitioner evaluated by Dr. Steinberg to determine whether a psychological defense could be raised at trial. Dr. Steinberg prepared a three-page summary report based on his evaluation of the Petitioner. In that report, Dr. Steinberg explained the results of various tests he had performed on the Petitioner and noted that the Petitioner may have a possible diminished capacity defense. Trial counsel testified that he proceeded to trial on a dual strategy–first, that the Petitioner suffered from diminished capacity and second, that the Petitioner had overreacted to an event. Based upon the first strategy, the trial court gave the jury an instruction as to diminished capacity.

Additionally, trial counsel testified that he reviewed Dr. Steinberg's report with the Petitioner prior to a motion to suppress hearing in December 2005. Moreover, trial counsel stated that he gave the Petitioner a copy of all the discovery he had received before the trial. In 2012, the Petitioner wrote to trial counsel to request a copy of his file. Trial counsel responded on July 5, 2012, stating that he had already given copies of everything in the file to the Petitioner. Trial counsel admitted that he did not ask Dr. Steinberg for the actual tests he performed on the Petitioner. Consequently, he did not give copies of the actual tests to the Petitioner.

On cross-examination, trial counsel confirmed that he had received Dr. Steinberg's report in October 2005. Additionally, trial counsel stated that Dr. Steinberg testified at trial as to his opinion of the Petitioner's mental state and told the jury that his testimony was based upon his evaluations of the Petitioner. He also noted that Dr. Steinberg testified at a hearing on a motion to suppress. Moreover, trial counsel stated that he had tried other cases with mental health defenses before the Petitioner's, and it is common practice for an evaluating expert to explain his opinion to the jury and state that he had based that opinion on tests and evaluations given to the defendant. Trial counsel stated that he had never introduced an expert's actual tests into evidence but instead relied on the expert's testimony.

The Petitioner testified that he was evaluated by Dr. Steinberg so "[his] attorney could find a defense for [him]." He claimed he did not receive a copy of any reports Dr. Steinberg had prepared or any of the tests he had performed on the Petitioner. Additionally, the Petitioner said that he did not receive a copy of the report summarizing Dr. Steinberg's findings before the December 2005 motion to suppress hearing; instead, he claimed he first saw the summary report when trial counsel sent it to him in June 2012.

The Petitioner stated that, based on the information he saw in the summary report, he believed that his defense was not properly argued at trial. He noted that Dr. Steinberg's report suggested that the Petitioner had a possible diminished capacity defense, but he claimed that counsel argued an insanity defense at trial as opposed to diminished capacity.

On cross-examination, the Petitioner stated that he remembered Dr. Steinberg testifying at the motion to suppress hearing, but he did not remember the substance of his testimony. However, the Petitioner stated that he believed Dr. Steinberg testified about the Petitioner's mental capacity at both trial and the motion to suppress hearing. The Petitioner also admitted that trial counsel met with him a couple of times before trial to talk about the case, but he claimed he did not remember ever discussing a defense strategy during these meetings.

In a written order, the trial court found that it was unlikely that the trial outcome would had been different had the summary report and test results from Dr. Steinberg's evaluation been admitted to bolster a diminished capacity defense. The trial court noted that the Petitioner had confessed twice to killing the victim, and both of those confessions were used against the Petitioner at trial. In light of the evidence that was presented to the jury, the trial court found that it was unlikely that the admission of the report and the individual tests on which Dr. Steinberg based his opinion would have changed the jury's verdict.

Additionally, the trial court found that Dr. Steinberg's summary report and test results did not constitute new evidence. The trial court noted that Dr. Steinberg testified at trial as to his opinions as expressed in his summary report and that those opinions were based upon findings from the tests he personally administered to the Petitioner. As the ultimate finder of fact, the jury could choose to believe or disbelieve Dr. Steinberg's testimony, and the trial court noted that the verdict reflected the jury's determination that the Petitioner was not mentally compromised. Based on these findings, the trial court denied relief.

## Analysis

On appeal, the Petitioner argues that the trial court "failed to understand" that the new evidence directly related to the Petitioner's mental capacity at the time of the offense and that the evidence could have bolstered Dr. Steinberg's testimony. The State maintains that the petition is barred by the statute of limitations. Additionally, the State argues that Dr. Steinberg's summary report is not newly discovered evidence and even if it were, it would not have affected the outcome of the trial.

Tennessee Code Annotated section 40-26-105 provides relief in criminal cases by petition for error coram nobis and states in pertinent part:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b) (2012). The writ of error coram nobis is "an *extraordinary* procedural remedy," providing relief in only a limited number of cases. State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original). "The purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn.

Crim. App. 1995) (quoting <u>State ex rel. Carlson v. State</u>, 407 S.W.2d 165, 167 (Tenn. 1966)). The decision of whether to grant or deny a petition for writ of error coram nobis on its merits rests within the sound discretion of the trial court. <u>State v. Vasques</u>, 221 S.W.3d 514, 527-38 (Tenn. 2007).

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103 (2000); <u>Harris v. State</u>, 301 S.W.3d 141, 144 (Tenn. 2010). "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." <u>Harris</u>, 301 S.W.3d at 144 (citing <u>Mixon</u>, 983 S.W.2d at 670). Calculating the statute of limitations in this manner is consistent with the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." <u>Mixon</u>, 983 S.W.2d at 670; <u>Harris</u>, 301 S.W.3d at 144. The State bears the burden of raising a violation of the statute of limitations as an affirmative defense. <u>Harris</u>, 301 S.W.3d at 144. Whether a claim is time-barred is a question of law, which we review *de novo*. <u>Id.</u> (citing <u>Brown v. Erachem Comilog, Inc.</u>, S.W.3d 918, 921 (Tenn. 2007)).

In certain circumstances, due process considerations may require tolling the statute of limitations. <u>Workman v. State</u>, 41 S.W.3d 100, 101 (Tenn. 2001). To determine whether due process requires tolling, we must balance the State's interest in preventing "stale and groundless" claims against the petitioner's interest in having a hearing to present newly discovered evidence which may have led the jury to a different verdict if it had been presented at trial. <u>Id.</u> at 103. To balance these interests, courts should use a three-step analysis:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the ground for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

<u>Sands v. State</u>, 903 S.W.2d 297, 301 (Tenn. 1995); <u>see also</u> <u>Harris</u>, 301 S.W.3d at 145.

In this case, the State appropriately raised the statute of limitations issue in the trial court, and it maintains on appeal that the statute of limitation bars the Petitioner's request for relief. We agree.

A petition for writ of error coram nobis must be filed within one year of the date the judgment became final in the trial court. The record in this case does not reflect whether any post-trial motions were filed before direct appeal or the date the judgment of conviction became final. However, in its order denying coram nobis relief, the trial court noted that the Petitioner was convicted on March 23, 2007, and we note that the direct appeal was assigned to this Court on briefs on July 1, 2008, and decided on October 13, 2008. Leon Flannel, 2008 WL 4613829. Therefore, the statute of limitation began to run, at the latest, in 2008. The Petitioner filed his *pro se* petition for error coram nobis on July 24, 2013–five years after the latest point at which the judgment of the trial court became final. The petition was untimely filed, but we must consider whether due process requires tolling the statute of limitations.

As noted above, the limitations period began to run in 2007 or 2008. The second step of the due process analysis requires us to determine whether the grounds for relief arose after the limitations period commenced. See Sands, 903 S.W.2d at 301. The Petitioner claims Dr. Steinberg's summary report, dated October 26, 2005, and the tests referenced in that report are "newly discovered evidence" that should have been introduced at trial. However, trial counsel testified that he received that report in October 2005 and reviewed it with the Petitioner prior to a motion to suppress hearing in December 2005. Additionally, trial counsel stated that he gave the Petitioner copies of everything in his file prior to trial. Finally, when the Petitioner wrote to trial counsel in 2012 requesting copies of his file, trial counsel wrote back and explained that he had already given the Petitioner copies of everything in his file. We also note that Dr. Steinberg testified as to his evaluation of the Petitioner at trial. He told the jury that he had based his opinion on tests he had performed on the Petitioner, and he explained his findings based on the results of those tests. Based on these facts, we find that the grounds for relief did not arise after the limitations period had commenced, but instead, arose prior to trial. Since the evidence is not "later-arising," we need not consider the third step of the due process analysis. Therefore, we find that due process does not require tolling the statute of limitations, and the petition for writ of error coram nobis is time-barred.

However, even if the petition had been timely filed, the Petitioner would not be entitled to relief. In order to be granted relief under a writ of error coram nobis, the Petitioner must present newly discovered evidence that may have resulted in a different judgment had it been presented at trial. Tenn. Code Ann. § 40-26-105(b) (2012). The Petitioner's evidence in this case is not "newly discovered." As noted above, the summary report was available to the Petitioner before trial, and Dr. Steinberg testified as to his findings at trial. Additionally, the jury received an instruction as to diminished capacity, but by convicting the Petitioner as charged, it chose not to believe Dr. Steinberg's testimony and found that the Petitioner was not suffering from diminished capacity at the time of the offense. It is unlikely that introducing the individual tests to bolster Dr. Steinberg's

testimony would have resulted in a different verdict.  Therefore, we find that the trial court did not abuse its discretion in denying relief.

## **<u>Conclusion</u>**

For the aforementioned reasons, we affirm the judgment of the trial court.

_____<br>
ROBERT L. HOLLOWAY, JR., JUDGE